## IN THE MATTER OF THE MINOR CELINA, CYROT GENTES, Opponent.

There are somethings, that pass before the eye of a district judge, which cannot be preserved in evidence, and I will not disregard entirely his impressions arising from them when, in his written opinion, they are declared.
Per SLIDELL, J. EUSTIS, C. J., concurring.

I cannot consider the appearance (conduct and manner) of *Gentes*, in the district court, as it is not presented in the form of testimony.

I am inclined to think, that nothing but a decree of interdiction, should deprive a parent of his child on the ground of insanity.
PRESTON, J. ROST, J., concurring.

APPEAL from the Second District Court of New Orleans, *B. Beauregard*, for plaintiff. *Cyrot Gentes pro se. L. Castera*, for defendant. The court was divided in opinion.

SLIDELL, J. I have not been able to concur in the opinion prepared by Mr. Justice Preston, and will briefly state my reasons.

*Joseph Higgins* was appointed dative tutor of the minor by the district judge, under the authority of the 396th article of the code, which authorizes the judge to appoint a tutor to a foundling or a child abandoned, giving the preference to the person protecting it. This decree of a court of competent jurisdiction, was rendered upon evidence which is not before us. *Gentes* has, I concede, a right to attack it; but in doing so, he is the actor, and must make out a proper case for withdrawing the child from the custody of the person to whom the decree has entrusted her. The district judge declares, that he did not feel justified in placing the child in the custody or under the control of *Gentes*, from what he had himself seen of him, (I presume he means in the conduct of his own cause in the court below,) from a perusal of his petition, and from the facts disclosed on the trial of a previous case of *habeas corpus·* The testimony on this trial is not before us. But the petition which was prepared by *Gentes* in proper person satisfies me, as it did the district judge, that it was the production of a disordered mind. As to the manner of the petition before the court, I cannot agree with what seems to be the opinion of the counsel for the appellant, that we are to disregard the remarks of the district judge respecting it. Certainly, as a general rule, we are to look to the evidence in a cause. But there are somethings that pass before the eye of a judge that cannot be preserved in the statement of ·evidence, and yet, which in the search for truth, he cannot conscientiously disregard ; nor can we disregard entirely his impressions arising from them, when, in his written opinion, they are declared. We are bound, on the contrary, to receive them with consideration, and derive what assistance from them we reasonably may, in forming our conclusions. For example : If a district judge should declare in his opinion that the manner of a witness on the stand created doubt of his veracity, we, in considering the testimony on appeal, would give great weight to the statement. The judge has in substance declared, that his conviction of the unsoundness of the father's mind is such, that he could not, without doing violence to a sense of duty, grant his prayer to displace the dative tutor and put the child under his control.

I therefore think we should affirm the judgment, which was a dismissal of his petition, without prejudice to his right to renew the application hereafter, should circumstances appear to justify it.

EUSTIS, C. J., concurred with JUSTICE SLIDELL.

PRESTON, J. *Joseph Higgins* alledged that his wife was entrusted by the Recorder of the Third Municipality, with the care of a female child, named *Celina*, about five years of age, which was taken from the custody of *Cyrot Gentes*, on account of ill-treatment; that the child is a foundling, abandoned, and her parents unknown or dead, and that no person was legally authorized to take care of the child.

In conformity with article 296 of the Civil Code, the Second District Court appointed *Joseph Higgins* tutor of the child.

*Cyrot Gentes* immediately made opposition to this proceeding, alledging that the girl was his natural child, whom he had duly recognized and legitimated by an authentic act. He alledged that the recorder had been deceived; that he was giving to his daughter all proper care, and had means to provide for her support, education and welfare, which he had devoted to her, by paying board for her, at the rate of twelve dollars a month. He alledged, that *Mr. Higgins* and his wife were not suitable persons to be entrusted with the care of his child, and prayed that the appointment of *Joseph Higgins*, as her tutor, might be revoked. *Higgins* denied the allegations in the opposition,

The opponent produced an act before a notary public, by which, on the 3d day of October, 1848, he acknowledged the child to be his natural daughter, and declared that he thereby constituted her his legitimate child.

There is sufficient proof that she is his natural child, and that her mother is dead, and the act of the 24th of March, 1831, authorized her legitimation ; we therefore assume, that the opponent is a father claiming the custody of his legitimate child, and the exercise of his paternal authority over her.

The district court dismissed the opposition of *Cyrot Gentes*, on the ground, that by personal observation of his conduct and inspection of his pleadings, he did not consider him a proper person to be entrusted with the child, considering that his mind was disordered.

The evidence leads me to the conclusion, that whatever may have been the excentricities of *Cyrot Gentes*, he possesses the affection for his offspring, which nature imprints on the hearts of all men ; that he has treated his child with ordinary care, considering his situation, and that he has means to afford her a support and education ; and I concur with his witnesses, that ordinarily, the best situation of a child, is to be under the paternal power and care of its natural parents.

There are exceptions to this rule, but the law does not recognize them, unless the parent is removed from the tutorship of his child, by formal judicial proceedings.

The father is of right the tutor of his child. Code, art. 274. The tutor shall have the care of the person of the minor. Art. 327. The child owes honor and respect to his father. Art. 233. And as long as he remains under his paternal authority, is bound to obey him in everything, which is not contrary to good morals and the laws. Art. 235. He remains under the paternal authority, until his majority. Art. 234. And cannot quit the paternal house, without the permission of the father. Art. 236.

I cannot consider the appearance of *Gentes* in the district court, as it is not presented in the form of testimony, and inclined to think, that nothing but a decree of interdiction should deprive a parent of his child, on the ground of insanity, whilst there remains a flickering of intellect ; nature prompts the parent to do all for his offspring that he can do for himself, and parental affection is the last instinct that leaves the human mind.

I think the judgment of the district court should be reversed ; the appointment of *Joseph Higgins* as tutor of the minor child *Celina* revoked ; and that she should be restored to the paternal power and custody of her father.

ROST, J. concurred with PRESTON, J.